## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DELISLE SALES GROUP, LLC,

    *Plaintiff*,

    v.

HOUSE OF WU, LLC,

    *Defendant*.

No. 3:20-cv-00819 (MPS)

## RULING ON MOTION TO DISMISS

Plaintiff DeLisle Sales Group, LLC ("DeLisle), brings this action against House of Wu, LLC ("House of Wu"), alleging that it owes DeLisle unpaid sales commissions under a contract between the parties as well as double or treble damages under Connecticut, Massachusetts, New Hampshire, Maine, and New York law.  Compl., ECF No. 9 ¶¶ 1, 73-120.  House of Wu moves to dismiss in favor of arbitration under the Federal Arbitration Act ("FAA"), or, in the alternative, to transfer this action to the U.S. District Court for the Middle District of Florida. ECF No. 24.  For the reasons set forth herein, House of Wu's motion to dismiss is GRANTED.[1]

## I.    BACKGROUND

The following facts are drawn from DeLisle's operative complaint and are accepted as true for the purpose of this motion.

DeLisle  is a New Hampshire  limited liability company, the sole member of which is Annemarie DeLisle, who is a citizen of New Hampshire.  ECF No. 9 ¶¶ 3-5. House of Wu is a Delaware limited liability company with a principal place of business in Florida, the sole member of which is Wen Jung Wu, who is a citizen of Florida.  *Id.* ¶¶ 6-8.  DeLisle and House of Wu "entered into a written sales representative agreement in May 2018."  *Id.* ¶ 25.  In the

---

[1] As a result, I do not reach the parties' arguments regarding transfer of this case.

1

agreement, DeLisle's sales territory included Connecticut, Massachusetts, New Hampshire, Maine, and New York. *Id.* ¶ 28. House of Wu "manufactures, produces, imports, sells or distributes special occasion clothing, such as bridal gowns." *Id.* ¶ 70. The parties "maintained a business relationship . . . from on or about May 2018 through November 2019 [in which DeLisle agreed] to sell [House of Wu's] products [in the assigned sales territory]." *Id.* ¶ 71. In November 2019, House of Wu "terminated" its sales relationship with DeLisle and failed to pay sales commissions of at least $26,220.35 for work performed by DeLisle in October and November 2019. *Id.* ¶¶ 12-14, 43, 52, 73-120.

The sales agreement provides as follows in paragraph 10: "10. Governing Law and Forum. This Agreement shall be governed by the laws of the State of Florida. All claims or disputes arising under or relating to this Agreement are to be settled by binding arbitration in the State of Florida, Lee County. An award of arbitration may be confirmed in a court of competent jurisdiction." ECF No. 9 ¶¶ 29-32; *see also* ECF No. 24-2 at 4. Before filing this federal lawsuit, DeLisle "filed for arbitration" in New England and paid the filing fee. *Id.* ¶¶ 17-18, 38, 68. In a letter dated April 28, 2020, House of Wu objected and "refused to arbitrate pursuant to the Federal Arbitration Act[,]" "argu[ing] that arbitration between the parties must be conducted pursuant to the Florida Arbitration Code." *Id.* ¶¶ 20-22.

DeLisle seeks "unpaid commissions to a sales representative pursuant to the state laws of Connecticut, Massachusetts, New Hampshire, Maine and New York." *Id.* ¶¶ 1, 3-4. Specifically, DeLisle alleges that House of Wu "willfully failed to pay commissions to [DeLisle]" in violation of: (1) Conn. Gen. Stat. § 42-482; (2) Mass. Gen. Laws ch. 104, § 9; (3) N.H. Rev. Stat. Ann. § 339-E:3; (4) Me. Stat. tit. 10, § 1344; and (5) NY Law § 191-c. *Id.* ¶¶ 73-120.

2

## II.     LEGAL STANDARD

Because House of Wu's motion to dismiss is unusual in the relief it seeks, some discussion of the governing legal standard is warranted.  Specifically, House of Wu "seeks dismissal in favor of the parties' Sales Representative Agreement[,] which contains an agreement to arbitrate the claims raised[,]" "[p]ursuant to the Federal Arbitration Act."  ECF No. 24-1 at 1. Notably, though House of Wu cites the standard governing motions to compel arbitration, House of Wu does not seek to compel arbitration, nor does it request a stay of this case pending any arbitration as contemplated by the FAA.  *See* 9 U.S.C. § 3 (providing for motions to stay pending arbitration); *id.* § 4 (providing for motions to compel arbitration).  The FAA does not expressly provide for dismissal of a complaint, and House of Wu does not cite any subsection of Federal Rule of Civil Procedure 12 in support of its motion.  DeLisle does not address the legal standard at all in its opposition to the motion to dismiss.

In the Second Circuit, district courts have discretion to construe a motion to dismiss as a motion to compel where the movant "explicitly or implicitly ask[s] the court to order arbitration."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).  But where, as here, "the moving party does not manifest an intention to arbitrate the dispute, . . . [district courts are] not require[d] to convert the motion to dismiss to one to compel."  *Id.* (agreeing with district court's treatment of defendant's motion to dismiss "in favor of individual arbitration" pursuant to a written agreement to arbitrate as a motion to dismiss under Rule 12(b)(6), rather than as a motion to compel); *see also Bombardier Corp. v. National R.R. Passenger Corp.*, 333 F.3d 250, 254 (2003) ("A motion to compel under 9 U.S.C. § 4 or stay under 9 U.S.C. § 3, by definition, invokes the FAA's policy favoring enforceability of arbitration agreements and asks the Court to order arbitration, presupposing the party's intent to arbitrate its disputes.  [Defendant's] motion [to dismiss under Rule 12(b)(6)] did neither, therefore, it was not analogous to either of those

motions, and we will not treat it as if it were.").  As a result, I construe House of Wu's motion to dismiss as seeking dismissal under Federal Rule of Civil Procedure 12(b)(6), and evaluate it under the corresponding standard.

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court accepts as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id.*, and "must draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).  However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss.  *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014).

In deciding the motion, I may also consider the sales agreement, DeLisle's "Statement of Claim" submitted to an arbitration firm in Boston, and House of Wu's objection to that arbitration based on the selection of Lee County, Florida, as the place of arbitration in the sales agreement—all of which are relied on in the complaint.  *See* ECF No. 9 ¶¶ 17-22, 25-26, 28-32; ECF Nos. 24-2, 24-3 & 24-4; *see also Nicosia*, 834 F.3d at 230 ("A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.  Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect,

thereby rendering the document integral to the complaint.") (internal quotation marks and citations omitted).[2]

## III.    DISCUSSION

DeLisle argues that this case is properly brought in the District of Connecticut and should be evaluated under Connecticut law, rather than in accordance with the choice-of-law, arbitration, and forum selection provisions[3] in the sales representative agreement.  ECF No. 25 at 2-3, 7.  Specifically, DeLisle argues that: (1) under a conflict of laws analysis, Connecticut law, rather than Florida law, should apply to the parties' contract; and (2) the arbitration and forum selection provisions are void under section 2 of the FAA.  ECF No. 25 at 1.  Because I find that the parties' contract requires them to arbitrate DeLisle's claim and that the arbitration agreement is not void, and therefore that dismissal in favor of arbitration is warranted, I do not decide whether the choice-of-law provision selecting Florida law is binding on the parties or which state's law governs the sales agreement.

### A.    The FAA

The FAA reflects "a strong federal policy favoring arbitration as an alternative means of dispute resolution."  *Ragone v. Atlantic Video at Manhattan Center*, 595 F.3d 115, 121 (2d Cir. 2010).  The FAA applies if the agreement containing the arbitration provision affects interstate commerce.  *Id.*  Here, the parties do not dispute that the sales agreement, which is between

---

[2] The exchange of emails regarding the attempted arbitration and its withdrawal (ECF No. 24-5), however, are not referred to in the complaint and so I do not consider them, although neither party appears to dispute the facts reflected in those documents.

[3] "An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute."  *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974).  Here, I use the term "arbitration" agreement, clause or provision to refer to the parties' agreement to arbitrate, and I use the term "forum selection" clause or provision to refer to the parties' agreement that the place of arbitration be in Lee County, Florida.

parties from different states and contemplates the sale of items in at least seven states, affects interstate commerce.  *See* ECF No. 24-2 at 2, 5.[4]

"In deciding whether a dispute is arbitrable, [the court] must answer two questions: (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue."  *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (quotation marks and citations omitted).  Here, the parties do not dispute either question—both DeLisle and House of Wu acknowledge that they agreed to arbitrate *and* that the scope of their agreement to arbitrate encompasses the claims at issue here.  *See* ECF No. 24-1 at 1 (defendant seeking dismissal in favor of arbitration); ECF No. 25 at 5 (plaintiff's statement that "DeLisle does not object to arbitration."); ECF No. 9 ¶¶ 17, 68 (DeLisle "filed for arbitration" in New England prior to filing this lawsuit).  Indeed, both DeLisle and House of Wu signed the sales agreement in May 2018, ECF No. 24-2 at 4, and both agree that the choice-of-law, forum selection, and arbitration provisions contained in paragraph 10 of the contract are part of the

---

[4] DeLisle does not allege that it did not consent to paragraph 10 of the sales agreement, or that its consent was obtained by misrepresentation, duress, undue influence, or mistake.  So I need not consider whether any of these exceptions, which apply to contracts generally, affect the validity of the choice of law, forum selection, and arbitration provisions.  *See Elgar v. Elgar*, 679 A.2d 937, 941 & n.7 (Conn. 1996).  To the extent DeLisle asserts that House of Wu is estopped from arguing that the FAA applies to the arbitration agreement because it refused to arbitrate with JAMS in Boston, Massachusetts, *see* ECF No. 9 ¶ 24, that is not an argument I may address because it concerns the forum selection clause rather than the agreement to arbitrate itself and is thus reserved for the arbitrator.  *UBS Fin. Servs., Inc. v. W. Virginia Univ. Hosps., Inc.*, 660 F.3d 643, 655 (2d Cir. 2011) (venue of arbitration "is a procedural issue that [an arbitrator] should address in the first instance, [over which] . . . District Court[s] lack[] subject matter jurisdiction . . . .").  If I could address it, though, I would find that it lacks merit, because refusing to arbitrate at a location other than the one specified in the arbitration agreement is not refusing to arbitrate in accordance with the agreement.  To the extent that DeLisle argues that House of Wu has "waived any rights to arbitration pursuant to the FAA," ECF No. 9 at ¶ 23, by invoking the Florida Arbitration Code, I cannot address that argument either for the same reason.  *Bell v. Cendant Corp.*, 293 F.3d 363, 569 (2d Cir. 2002) ("Ordinarily a defense of waiver brought in opposition to a motion to compel arbitration is a matter to be decided by the arbitrator." (internal quotation marks and alterations omitted)); *see also Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 394 (2d Cir. 2011) ("Both waiver and estoppel generally fall into that latter group of [procedural] issues presumptively for the arbitrator.").  Again, however, if I could address the argument, I would find it meritless, because there is no inherent conflict between the Florida Arbitration Code and the FAA.  *See Shotts v. OP Winter Haven, Inc.*, 86 So. 3d 456, 463-64 (Fla. 2011) ("In Florida, an arbitration clause in a contract involving interstate commerce is subject to the Florida Arbitration Code (FAC), *to the extent the FAC is not in conflict with the FAA*." (emphasis added)).

6

operative contract.  *See* ECF No. 9 ¶¶ 29-32; ECF No. 24-1 at 2-3; ECF No. 25 at 2-3.  In addition, the parties' agreement to arbitrate "[a]ll claims or disputes arising under or relating to" the sales representative agreement is broad and creates a presumption of arbitrability that DeLisle does not contest.  *See Holick*, 802 F.3d at 394-95 (holding that "the arbitration clause at issue here is broad because it applies to '[a]ll claims, disputes, or controversies arising out of, or in relation to this document or Employee's employment with [the defendant]'").

Instead, DeLisle argues that the arbitration and forum selection clauses are void under Section 2 of the FAA, which provides that  an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  This provision means that, despite the "strong the federal policy favoring arbitration," "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements."  *Ragone*, 595 F.3d at 121.  Invoking Section 2, DeLisle argues that the arbitration and forum selection provisions constitute "a prospective waiver of statutory rights", ECF No. 25 at 4, and that they are substantively unconscionable because Florida law leaves DeLisle without a remedy, *id.* at 5.  Both arguments fail as a matter of law.

**B.     The FAA Preempts Any State Law That Bars Arbitration of Claims Involving Sales Representatives' Commissions.**

 "[W]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011).  The FAA "also displaces any rule that covertly accomplishes the same objective by disfavoring contracts that (oh so coincidentally) have the defining features of arbitration agreements."  *Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017).  Here, DeLisle apparently relies on a Connecticut sales commission

statute that provides a right to bring a "civil action".  ECF No. 25 at 4-5 (discussing *Avionics*

*Tech., Inc. v. Ulti-Mate Connector, Inc.*, 2011 WL 1886578 *3 (discussing statute)); Conn. Gen.

Stat. § 42-482(b) ("Any principal who wilfully, wantonly, recklessly or in bad faith fails to pay

any commissions due in accordance with the provisions of subsection (a) of this section shall be

liable in a civil action brought by a sales representative for twice the full amount of the

commission owed to such sales representative."); *see also* Conn Gen. Stat. § 42-484(a) ("Any

provision in a contract between a sales representative and a principal that provides for the waiver

of any provision of sections 42–482 and 42–483 shall be void.").  Under Connecticut law,

> an "arbitration proceeding is not an 'action' . . .".  It has long been recognized that the
> word "action" generally means "the lawful demand of one's right in a court of justice;
> and in this sense it may be said to include any proceeding in such a court for the purpose
> of obtaining such redress as the law provides."

*Avionics Techs., Inc.*, 2011 WL 1886578, at *3 (citing *Dayco Corp. v. Fred T. Roberts and Co.*,

192 Conn. 497, 502-03 (1984)).  But if Connecticut law applies to the parties' relationship—an

issue, as noted, I do not decide—, then the FAA preempts the Connecticut statute to the extent

that it forbids arbitration of the parties' dispute.  *See Kindred Nursing Centers Ltd. P'ship*, 137 S.

Ct. at 1426; *Concepcion*, 563 U.S. at 341; *see also Avionics Techs., Inc.*, 2011 WL 1886578, at

*4 ("[T]o the extent that the Connecticut Sales Representatives' Commissions Statute conflicts

with the FAA, the Supremacy Clause of the Constitution results in state law being rendered

preempted and unenforceable.") (internal quotation marks omitted).

DeLisle's reliance on the vindication-of-statutory-rights doctrine discussed in *Mitsubishi*

*Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985), does not alter this

conclusion.  *See* ECF No. 25 at 3.  That is so because, as the defendant points out, the

vindication-of-statutory-rights doctrine does not apply to state law.  Rather, it reflects a judicial

concern for respecting competing *federal* statutes.  *See Orman v. Citigroup, Inc.*, No. 11 CIV.

7086 DAB, 2012 WL 4039850, at *3 (S.D.N.Y. Sept. 12, 2012) ("the entire line of case law in which the vindication of statutory rights analysis was developed deals with federal, as opposed to state, statutory rights.") (citing *14 Penn Plaza LLC v. Pyett*, 129 S. Ct. 1456, 1474 (2009) (observing, in dicta, that "a substantive waiver of federally protected civil rights will not be upheld . . ."); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000) (acknowledging, in dicta, "that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum")); *Crewe v. Rich Dad Educ., LLC*, 884 F. Supp. 2d 60, 79 (S.D.N.Y. 2012) ("[T]he Second Circuit . . . [has made it] clear that this [vindication of statutory rights] doctrine applies only where a party's federal statutory rights are at issue.  In her concurrence, Judge Pooler emphasized the limited scope of the court's holding, pointedly distinguishing claims based on state law: Although arbitration clauses in cases involving state-law claims might raise state-law questions of unconscionability, she noted, the issue presented in *Amex* was whether the FAA 'always trumps rights created by a competing federal statute.'") (citing *In re Am. Express Merchs. Litig.*, 681 F.3d 139, 140 (2d Cir. 2012) ("Amex IV" ) (Pooler, J., concurring)).

## C.  The Arbitration Agreement is Not Unconscionable.

The Supreme Court has held that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA]."  *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Because I find that the parties' arbitration agreement is not unconscionable under either Connecticut or Florida law, I need not decide whether the parties are bound by the choice-of-law provision selecting Florida law.  *See Cohen v. Roll-A-Cover, LLC*, 27 A.3d 1, 16 (Conn. App. 2011) ("The threshold choice of law issue in Connecticut, as it is elsewhere, is whether there is

an outcome determinative conflict between applicable laws of the states with a potential interest in the case.  If not, there is no need to perform a choice of law analysis, and the law common to the jurisdiction should be applied.").  Indeed, both Connecticut and Florida favor the enforcement of arbitration agreements as a matter of public policy.  *See City of Hartford v. Am. Arbitration Ass'n*, 391 A.2d 137, 141 (Conn. 1978) ("[Connecticut] has long favored arbitration as a means of settling disputes."); *Glob. Travel Mktg., Inc. v. Shea*, 908 So. 2d 392, 397 (Fla. 2005) ("In Florida as well as under federal law, the use of arbitration agreements is generally favored by the courts.").

Under Florida law, "[both] procedural and substantive unconscionability must be established to avoid enforcement of the terms within an arbitration agreement."  *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1159 (Fla. 2014).  "[W]hile both elements must be present, they need not be present to the same degree."  *Id.*  Florida courts use a sliding scale approach, where "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  *Id.*  (citation omitted).  "To determine whether a contract is procedurally unconscionable, a court must look to the manner in which the contract was entered into and consider factors such as whether the complaining party had a meaningful choice at the time the contract was entered into."  *Murphy v. Courtesy Ford, L.L.C.*, 944 So. 2d 1131, 1134 (Fla. Dist. Ct. App. 2006).  "To determine whether a contract is substantively unconscionable, a court must look to the terms of the contract, itself, and determine whether they are so outrageously unfair as to shock the judicial conscience."  *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 284-85 (Fla. Dist. Ct. App. 2003) (internal quotation marks omitted).

Similarly, under Connecticut law "[t]he doctrine of unconscionability, as a defense to contract enforcement, generally requires a showing that the contract was both procedurally and substantively unconscionable when made—i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Bender v. Bender*, 975 A.2d 636, 658 (Conn. 2009) (internal quotation marks omitted). In Connecticut, as in Florida, "[s]ubstantive unconscionability focuses on the content of the contract, as distinguished from procedural unconscionability, which focuses on the process by which the allegedly offensive terms found their way into the agreement. Procedural unconscionability is intended to prevent unfair surprise and substantive unconscionability is intended to prevent oppression." *Hirsch v. Woermer*, 195 A.3d 1182, 1188 (Conn. App.) (internal quotation marks and citations omitted), *cert. denied*, 195 A.3d 384 (Conn. 2018).

Here, DeLisle asserts only that the arbitration agreement is substantively unconscionable, and makes no argument that the arbitration agreement is procedurally unconscionable. As a result, I need not consider DeLisle's argument concerning substantive unconscionability. *See Weston*, 857 So. 2d at 288 ("[T]he party seeking to avoid the arbitration provision on the ground of unconscionability[] [carries] the burden . . . to present evidence sufficient to support that claim. That burden encompassed the obligation to prove *both* procedural and substantive unconscionability. Because [the party seeking to avoid arbitration] failed to present evidence sufficient to establish that the arbitration provision is procedurally unconscionable, she failed to carry this burden, and we need not decide whether the provision is substantively

unconscionable."); *see also Bender*, 975 A.2d at 658-59.[5]  On this basis alone, DeLisle's claim that the arbitration agreement is unconscionable fails.

But in any case, DeLisle's claim that the arbitration agreement is substantively unconscionable fails as well.  The plain terms of the arbitration agreement are fair and reasonable.  The parties agreed to a mandatory dispute resolution provision that selected binding arbitration in Lee County, Florida to resolve "[a]ll claims or disputes arising under or relating to" the sales representative agreement, and that an "award of arbitration may be confirmed in a court of competent jurisdiction."  ECF No. 24-2 at 4.  DeLisle's argument that it will be deprived of a remedy, because Florida repealed its sales commission law seven years ago and thus does not afford sales representatives the multiples of damages afforded by sales commission statutes in Connecticut and other states, is not an argument about the validity of the arbitration provision and in no way suggests that that provision is unconscionable; it is, instead, an argument about the validity of the choice-of-law provision, an issue I leave for the arbitrators to decide.  *See Nitro-Lift Tech., LLC v. Howard*, 568 U.S. 17, 20-21 (2012) (Under the FAA, "attacks on the validity of the contract, as distinct from attacks on the validity of the arbitration clause itself, are to be resolved by the arbitrator in the first instance, not by a federal or state court . . . .  [The] validity [of an arbitration provision] is subject to initial court determination; but the validity of the remainder of the contract (if the arbitration provision is valid) is for the arbitrator to decide." (internal quotation marks and citations omitted)); *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 541 (1995) (choice-of-law issue had to be decided by arbitrator).  There is thus nothing preventing the arbitrator from deciding that the Florida choice-of-law clause does

---

[5] In addition, it is hard to see how DeLisle could make any argument as to unfair surprise given that, as DeLisle makes clear, the Florida sales commission law was repealed *seven years* before the parties signed the contract.  *See* ECF No. 25 at 4.

not apply and applying the *substantive* provisions of the Connecticut sales commission statute, i.e., those providing for multiples of damages for withheld sales commissions (as opposed to any provisions construed to bar arbitration of sales commission disputes). Even if that issue is resolved against DeLisle and it ultimately faces a less generous remedial scheme because Florida and not Connecticut law is deemed to apply in all respects, that would not be a basis for finding the *arbitration agreement* substantively unconscionable.

* * *

Finally, dismissal in favor of arbitration is appropriate in this instance. *See Nicosia*, 834 F. 3d at 231 ("[W]hen it is apparent—on the face of the complaint and documents properly incorporated therein—that claims are subject to arbitration, a district court may dismiss in favor of arbitration without the delay of discovery. If, however, there is a dispute as to the relevance, authenticity, or accuracy of the documents relied upon, the district court may not dismiss the complaint with those materials in mind.") (internal citations omitted). Neither party disputes the relevance, authenticity, or accuracy of the sales agreement or any other document, and the parties agree that the claims are subject to arbitration. Further, because neither party has requested an order staying this case pending arbitration, the FAA does not require any such order. *See Benzemann v. Citibank N.A.*, 622 F. App'x 16, 18 (2d Cir. 2015) (affirming district court's dismissal of certain claims after granting a motion to compel arbitration of those claims because, where no party requests to stay proceedings in the district court, the FAA does not require a stay); *see also* 9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall *on application*

*of one of the parties* stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.") (emphasis added); *Katz v. Cellco P'ship*, 794 F.3d 341, 346-47 (2d Cir. 2015) (holding that "that the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration *and a stay requested* . . . .") (emphasis added) (internal citations omitted).

## IV.   CONCLUSION

For the foregoing reasons, Defendant House of Wu's motion to dismiss in favor of arbitration, ECF No. 24, is hereby GRANTED and this case is DISMISSED.  The Clerk is directed to close this case.


IT IS SO ORDERED.


                                                              _____/s/_____
                                                              Michael P. Shea, U.S.D.J.


Dated:        Hartford, Connecticut
              December 28, 2020